IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**ALFRED ALLEN HARPER,**

    Petitioner,

v.                                                                Civil Action No. **3:14CV707**

**DIRECTOR OF THE DEPARTMENT OF CORRECTIONS,**

    Respondent.

## MEMORANDUM OPINION

Alfred Allen Harper, a Virginia inmate proceeding *pro se*, filed this petition for habeas corpus pursuant to 28 U.S.C. § 2254 (§ 2254 Petition," ECF No. 1) challenging his convictions in the Circuit Court of the County of Henrico ("Circuit Court"). Respondent has moved to dismiss and the Magistrate Judge recommended that the Court grant the Motions to Dismiss.[1] Harper filed Objections. For the reasons that follow, Harper's Objections will be OVERRULED and Respondent's Motions to Dismiss will be GRANTED.

### I.    BACKGROUND

The Magistrate Judge made the following findings and recommendation:

Harper argues entitlement to relief on the following grounds:[2]

| | |
|---|---|
| Claim 1 | "Violation of petitioner['s] constitutional right to face his accusers in court and be present at this trial." (§ 2254 Pet. 5.) |
| Claim 2 | "Failure to disqualify judge for bias and prejudice . . . ." (*Id.* at 7.) |
| Claim 3 | "Ineffective assistance of counsel." (*Id.* at 8.) |

---

[1] Respondent filed two identical Motions to Dismiss.

[2] The Court corrects the capitalization and punctuation in quotations from Harper's submissions. The Court employs the pagination assigned to Harper's submissions by the CM/ECF docketing system.

| | |
|---|---|
| Claim 4 | "Convictions obtained by plea of guilty that was unlawfully induced and not made with [an] understanding of [the] charges or [the] consequences of [the] plea." (*Id.* at 10.) |
| Claim 5 | "Ineffective assistance of counsel (appeal attorney)." (*Id.* at 11.) |
| Claim 6 | "Denial of discovery and inspection." (*Id.*) |
| Claim 7 | "Denial of competency determination." (*Id.*) |

Respondent has moved to dismiss on the grounds that Claims 1, 2, and 7 are procedurally defaulted and the remaining claims lack merit.[3] For the reasons that follow, it is RECOMMENDED that the Motion to Dismiss be GRANTED.

### A. Factual and Procedural History

Harper was charged with multiple counts of credit card theft, credit card fraud, and conspiracy to commit credit card fraud in the Circuit Court. Prior to trial, Harper waived the right to be represented by counsel, and the Circuit Court appointed Gregory Cassis to act as Harper's standby counsel. *Harper v. Commonwealth*, No. 1369-12-2, at 2 (Va. Ct. App. Nov. 28, 2012). On May 10, 2012, Harper pled guilty to one count of credit card theft, two counts of credit card fraud, and one count of conspiracy to commit credit card fraud. *Id.* at 1. Harper then waived his right to a jury trial with respect to the remaining four charges of credit card theft. *Id.* at 1, 3. Thereafter, the Circuit Court took a recess to excuse the jury. *Id.* at 3. When the proceedings resumed, Harper

> stated that he wanted to withdraw his guilty pleas because he was not "feeling all right about them." [Harper] explained that he felt pressured to enter the guilty pleas because he was not given his clothes to wear to court, he was not given his paperwork, and he was forced into court wearing stripes. The trial judge denied [Harper's] request and found that his guilty pleas to four charges were entered knowingly and voluntarily. After the trial judge asked for opening statements, [Harper] stated he was not going to participate in the trial and he wanted to go back to the bullpen. The trial judge again asked for opening statement, and appellant made several vile and racially offensive statements to the trial judge and threw his papers. The trial judge found [Harper] in contempt and excluded [Harper] from the courtroom. The trial judge found that the vile and offensive statements were made voluntarily by [Harper].

---

[3] Respondent also notes that Harper defaulted on minor portions of his other claims for relief. Because such claims are readily dismissed for lack of merit, the Court recommends dismissing the claims for lack of merit.

2

*Id.*

Thereafter, in Harper's absence, the Circuit Court tried Harper on the four remaining charges of credit card theft. The Circuit Court found Harper guilty of three more charges of credit card theft. *Id.* at 1. The Circuit Court sentenced Harper to an active term of eight years of imprisonment for the credit card related charges. *Commonwealth v. Harper*, Nos. CR11-3122, 3123, 3125, through 3127, 3129, 3130-00F, at 1-2 (Va. Cir. Ct. May 17, 2012). The Circuit Court also found Harper in contempt of court for his offensive conduct and imposed thirty-five months of incarceration for six counts of contempt. *Id.* at 2–3. The Circuit Court appointed Mr. Cassis to represent Harper on appeal. (May 10, 2012 Tr. 140.)

On direct appeal to the Supreme Court of Virginia, Harper asserted that the Circuit Court exceeded its sentencing authority when it imposed the sentence for summary contempt. Petition for Appeal at 1, *Harper v. Commonwealth*, No. 122208, at 4 (Va. filed Dec. 27, 2012). The Supreme Court of Virginia refused Harper's petition for appeal. *Harper v. Commonwealth*, No. 122208, at 1 (Va. June 7, 2013).

Subsequently, Harper filed a petition for a writ of habeas corpus with the Supreme Court of Virginia wherein he raised many of the same claims that he presents in this § 2254 Petition. On July 11, 2014, the Supreme Court of Virginia denied the petition. *Harper v. Dir., Dep't of Corr. of Va.*, No. 140213, at 1 (Va. July 11, 2014).

**B.   Analysis**

**1.   Exhaustion and Procedural Default**

State exhaustion "'is rooted in considerations of federal-state comity,'" and in Congressional determination via federal habeas laws "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 491-92 & n.10 (1973)). The purpose of the exhaustion requirement is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks omitted). Exhaustion has two aspects. First, a petitioner must utilize all available state remedies before he can apply for federal habeas relief. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844-48 (1999). As to whether a petitioner has used all available state remedies, the statute notes that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate "'opportunity'" to address the constitutional claims advanced on federal habeas. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)) (additional internal quotation marks omitted). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to

the federal nature of the claim." *Id.* (quoting *Duncan*, 513 U.S. at 365-66). Fair presentation demands that a petitioner must present "'both the operative facts and the controlling legal principles' associated with each claim" to the state courts. *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004) (quoting *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000)). The burden of proving that a claim has been exhausted in accordance with a "state's chosen procedural scheme" lies with the petitioner. *Mallory v. Smith*, 27 F.3d 991, 994-95 (4th Cir. 1994).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). A federal habeas petitioner also procedurally defaults claims when he or she "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Id.* (quoting *Coleman*, 501 U.S. at 735 n.1).[4] The burden of pleading and proving that a claim is procedurally defaulted rests with the state. *Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010) (citations omitted). Absent a showing of cause and prejudice or his actual innocence, this Court cannot review the merits of a defaulted claim. *See Harris v. Reed*, 489 U.S. 255, 262 (1989).

Here, the Supreme Court of Virginia found that Harper procedurally defaulted Claims 1, 2, and 7 pursuant to the rule in *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974), because Harper could have, but failed, to raise these claims at trial and on direct appeal. *Harper v. Dir., Dep't of Corr. Va.*, No. 140213, at 1-2, 4 (Va. July 11, 2014) (citing *Slayton*, 205 S.E.2d 682). *Slayton* constitutes an adequate and independent state procedural rule when so applied. *See Mu'Min v. Pruett*, 125 F.3d 192, 196-97 (4th Cir. 1997). Thus, Harper has procedurally defaulted Claims 1, 2, and 7 unless he demonstrates cause and prejudice to excuse his default or his actual innocence. Harper obliquely suggests that the ineffective assistance of counsel constitutes cause which excuses his defaults. That suggestion lacks merit for the reasons set forth below. *See infra* Part B.6. Accordingly, it is RECOMMENDED that Claims 1, 2 and 7 be DISMISSED.

---

[4] Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is "technically met." *Hedrick v. True*, 443 F.3d 342, 364 (4th Cir. 2006) (citing *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996)).

4

### 2. The Applicable Constraints upon Federal Habeas Corpus Review

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

### 3. Denial of Discovery and Inspection–Claim 6

In Claim 6, Harper asserts that "the Commonwealth ... never gave [the] petitioner any discovery." (§ 2254 Pet. Attach. 9.) Harper further complains that the prosecution only permitted him to view surveillance video of his crimes at a WaWa and Pit Stop Gas Station under the supervision and control of a detective. (*Id.*) The Supreme Court has made clear that "[t]here is no general constitutional right to discovery in a criminal case...." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Although the prosecution is obliged to provide the defense with material exculpatory evidence, *see Brady v. Maryland*, 373 U.S. 83, 86 (1963), Harper fails to specify any such evidence that he was denied. Accordingly, it is RECOMMENED that Claim 6 be DISMISSED.

### 4. Allegedly Inadequate Guilty Pleas–Claim 4

In Claim 4, Harper contends that his guilty pleas to one count of credit card theft, two counts of credit card fraud, and one count of conspiracy to commit credit card fraud were "not made with [an] understanding of the charges or the

consequences of the plea." (§ 2254 Pet. Attach. 7, ECF No. 1-1.) In support of this claim, Harper notes that: (1) although he had a three piece suit, he was forced to wear his black and white striped prison jumpsuit;[5] (2) petitioner suffers from schizophrenia; and, (3) Harper did not have the assistance of counsel. *Id.* at 7-8.

The Circuit Court was fully aware of Harper's mental health condition. Additionally, the Circuit Court provided Harper with the opportunity to confer with standby counsel during the course of the arraignment, and Harper consulted with counsel. (May 10, 2012 Tr. 25-26.) Harper assured the Circuit Court with respect to the charges to which he was pleading guilty that: he understood what the Commonwealth had to prove in order to find him guilty (May 10, 2012 Tr. 31); he was entering his pleas freely and voluntarily and no one was forcing him to plead guilty (May 10, 2012 Tr. 31); he understood the rights he was giving up by pleading guilty (May 10, 2012 Tr. 32); and, he did not have any questions for the Circuit Court with respect to those charges (May 10, 2012 Tr. 32). The Circuit Court found that Harper's guilty pleas had been "knowingly, voluntarily, and intelligently given." (May 10, 2012 Tr. 44.)

The representations of the defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). Thus, "[a]bsent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992) (citations omitted). Harper's vague statements about his mental health issues, clothing, and counsel are insufficient to undermine his prior sworn assertions that he was knowingly and voluntarily pleading guilty. The Circuit Court had ample opportunity to view Harper during the course of his plea colloquy. The Circuit Court rejected Harper's attempt to withdraw his pleas, noting that Harper's guilty pleas had been "knowingly, voluntarily, and intelligently given." (May 10, 2012 Tr. 44.) Given the foregoing facts, Harper fails to demonstrate that his guilty pleas were not knowingly and voluntarily entered. Accordingly, it is RECOMMENDED that Claim 4 be DISMISSED.

### 5. Alleged Ineffective Assistance of Counsel Prior to Harper's Convictions–Claim 3

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient and, second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S.

---

[5] Harper cannot lay the blame for appearing in prison attire entirely at the feet of others. According to Harper's standby counsel, Gregory L. Cassis: "Mr. Harper's courtroom clothing was left in Loudon on the day of trial. He refused regular clothing offered by the [Henrico County] jail and stated the trial would need to be continued. Courtroom clothing was purchased for Mr. Harper that morning and Mr. Harper ultimately declined [a] jury trial, resolving the issue." Motion to Dismiss Ex. 8 ("Cassis Aff.") ¶ 10, *Harper v. Dir., Dep't of Corr. Va.*, No. 140213 (Va. filed Apr. 2, 2014).

6

668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

In Claim 3, Harper contends that he was denied the effective assistance of counsel. Harper, who was representing himself at the time is trial, fails to provide a succinct account of how he was denied effective assistance. As best as the Court can discern from Harper's submissions, Harper contends that counsel performed deficiently by: (1) by failing to move the Circuit Court for a competency hearing or otherwise alerting the Circuit Court of Harper's mental health problems, (§ 2254 Pet. Attach. 5), and failing to provide Harper with discovery and the confession of Harper's codefendant, which implicated Harper, (*id.* at 6).

Gregory L. Cassis, who initially represented Harper, and later acted as standby counsel, explained why he felt no need to move for a competency hearing. Specifically, Cassis averred:

> I met with Mr. Harper on several occasions prior to trial. . . .
>
> Throughout our meetings, Mr. Harper's behavior was at times aggressive and manipulative, but not irrational. I noted these behaviors to be consistent throughout the representation. I did not perceive a "downward spiral." At no time did I think a competency hearing was warranted.
>
> Regardless of the posture of his case, Mr. Harper always desired further continuances from the court. Mr. Harper faced similar charges in at least seven other jurisdictions: Caroline, Fredericksburg, Loudon, Rockingham, Stafford, Prince William and Winchester. The records in several of those cases indicate similar patterns of delay.
>
> To the best of my knowledge, Mr. Harper was not judged incompetent in any of [the] jurisdictions where he faced trial.
>
> In my conversations with Mr. Harper the morning of trial, he offered me a litany of reasons why the case must be continued, including discovery information, his mental health "report," and his courtroom clothing. This action and his behavior at trial appeared to be calculated attempts to avoid the hearing and delay the matter further.
>
> . . . .

7

> The "report" was simply a medical record that contained a medical diagnosis. The document in no way indicated that Mr. Harper was incompetent.
>
> . . . .
>
> Mr. Harper's outburst during trial was clearly due to his anger at the judge for not allowing a change in plea. He did not appear delusional at any point that day.

(Cassis Aff. ¶¶ 5-13 (paragraph numbers omitted).)

In rejecting this aspect of Claim 3, the Supreme Court of Virginia observed that "[t]he record, including the trial transcript and the affidavit of counsel, demonstrates that counsel did not believe that petitioner was irrational or delusional or required a competency hearing and perceived petitioner's behavior at trial as a calculated attempt to delay the proceedings." *Harper*, No. 140213, at 5. The Supreme Court further found that Harper failed to demonstrate deficiency or prejudice with respect to counsel's failure to pursue a competency hearing. *Id.* The Court discerns no unreasonable application of law or facts in the rejection of this aspect of Claim 3. *See* 28 U.S.C. § 2254(d)(1)-(2).

Next, Harper faults counsel for failing to provide Harper with discovery and the confession of Harper's codefendant. The Supreme Court of Virginia found this claim lacked factual and legal merit. *Harper*, No. 140213, at 6-7. Specifically, the Supreme Court of Virginia found that:

> [t]he record, including the trial transcript and the affidavit of trial counsel, demonstrates counsel received all of the Commonwealth's file materials not only from the Commonwealth but also from petitioner's first appointed attorney. Petitioner fails to proffer what additional information counsel could have obtained by filing a discovery motion or what other motions counsel should have filed.

*Id.* The Supreme Court of Virginia acted reasonably in concluding that Harper failed to demonstrate deficiency or prejudice. Accordingly, it is RECOMMENDED that Claim 3 be DISMISSED.

### 6. Alleged Ineffective Assistance of Appellate Counsel-Claim 5

In Claim 5, Harper contends that he was denied the effective assistance of counsel during his direct appeal because appellate counsel failed to raise on appeal all of the claims Harper wished to raise on appeal and failed to cite adequate law in support of the argument he raised on appeal.

"In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, the applicant must normally demonstrate" that appellate counsel performed deficiently and that a reasonable probability of a different result exists. *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (citing *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)). Counsel had no obligation to assert all non-frivolous issues on appeal. Rather, "'winnowing out weaker arguments on appeal and focusing on' those more likely

to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)). A presumption exists that appellate counsel "'decided which issues were most likely to afford relief on appeal.'" *Bell*, 236 F.3d at 164 (quoting *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993)). "'[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.'" *Id.* (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000)).

Here, on direct appeal to the Court of Appeals of Virginia, appellate counsel asserted that the Circuit Court erred by denying Harper's motion for a continuance on the day of trial, *Harper v. Commonwealth*, No. 1369-12-2, at 1 (Va. Ct. App. Nov. 28, 2012); in denying Harper's "motion to withdraw his guilty pleas because a mentally ill individual should not be forced to represent himself," *id.*; and, in imposing excessive, unauthorized sentences for contempt of court, *id.* at 3.

Harper fails to demonstrate that any of the claims he faults counsel for omitting on appeal are clearly stronger than those pursued by counsel. For example, Harper's claims about the denial of the ability to participate in the trial (Claim 1) and bias on the part of the trial judge (Claim 2), are not stronger than the claims pursued on directed appeal.[6] The record reveals that the Circuit Court patiently listened to and ruled upon multiple motions from Harper on the day of trial. (May 10, 2012 Tr. 12-23.) The Circuit Court then patiently arraigned Harper and provided him with an opportunity to consult with counsel. (May 10, 2012 Tr. 23-41.) Upon resumption of trial proceeding, the Circuit Court then heard and denied Harper's motion to withdraw his guilty pleas. (May 10, 2012 Tr. 44-45.)

Thereafter, Harper interrupted the Circuit Court, demanded to be returned to his cell, and cursed the Circuit Court:

> THE COURT: Opening statement, please.
>
> DEFENDANT HARPER: Well, I'm not going to participate in this trial. You might just as well just put me back in the bullpen because I don't want to, I don't want to participate in it.
>
> THE COURT: Opening statements begin.
>
> DEFENDANT HARPER: I said I don't want to participate in this trial. You're plotting against me. You're all working together and it's a bunch of crap, and I just want to go back to my cell.[7]

---

[6] Claim 7 lacks merit for the reasons discussed in conjunction with Claim 3.

[7] In his Reply (ECF No. 24), Harper disingenuously suggests he just did not want to participate as his own representative in the trial, but he "never said that he did not want to be at his trial." (Reply 3.) The record unequivocally reflects that Harper wanted to leave the courtroom and go back to his cell.

9

> THE COURT: All right. With that statement, then your choice then [is] to be absent, that's your choice.
>
> DEFENDANT HARPER: Okay. I take my - -
>
> THE COURT: All right. And find him in contempt of court.
>
> DEFENDANT HARPER: You a f*cking black *ss *igger.
>
> THE COURT: Five.
>
> DEFENDANT HARPER: A f*cking black *ss --
>
> THE COURT: -- Twelve months --
>
> DEFENDANT HARPER: -- piece of sh*t.
>
> THE COURT: Ten months.
>
> DEFENDANT HARPER: Piece of sh*t *ss , black *ss, f*cking con *ss, b*tch *ss, all he is black dirty *ss, black b*tch.

(May 10, 2012 Tr. 45-46.) At this point, at his own request, Harper left the courtroom. (May 10, 2012 Tr. 45-46.) Furthermore, the record reflects that after his standby counsel cross-examined the Commonwealth's witnesses, standby counsel met with Harper and offered him the opportunity to testify in his own defense. (Cassis Aff. ¶ 14.) Harper declined. (*Id.*) Harper waived his right to participate in his trial and confront his accusers by his explicit request to leave the courtroom and persistent disruptive and disrespectful behavior. *See United States v. Benabe*, 654 F.3d 753, 768 (7th Cir. 2011) (observing that a criminal defendant "may waive his right to be present either 'by consent or at times even by misconduct'" (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 106 (1934))).

Given the foregoing circumstances and Harper's inability to advance any evidence that the trial judge was biased against him, appellate counsel reasonably eschewed pursuing Claims 1, 2, or 7. Because Harper fails to demonstrate deficiency or prejudice, it is RECOMMENDED that Claim 5 be DISMISSED.

C. **Conclusion**

Accordingly, it is RECOMMENDED that Respondent's Motion to Dismiss (ECF No. 20) be GRANTED and that the action be DISMISSED. It is further RECOMMENDED that the Court deny a certificate of appealability.

(Report and Recommendation entered Feb. 12, 2016.)

## II. STANDARD OF REVIEW FOR REPORT AND RECOMMENDATION

"The magistrate makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this court." *Estrada v. Witkowski*, 816 F. Supp. 408, 410 (D.S.C. 1993) (citing *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976)). This Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "The filing of objections to a magistrate's report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985). When reviewing the magistrate's recommendation, this Court "may also receive further evidence." 28 U.S.C. § 636(b)(1).

## III. HARPER'S OBJECTIONS

Harper is less than precise in stating his objections. Initially, Harper contends that the Magistrate Judge erred in the recommending the dismissal of Claim 5, which concerned the competency of appellate counsel. Harper faults appellate counsel for failing to meet with him and pursue the claims that Harper wished to pursue on appeal. As explained by the Magistrate Judge, Harper fails to demonstrate deficiency of prejudice. Accordingly, Harper's first objection will be overruled.

Next, Harper asserts that appellate counsel had a conflict of interest because appellate counsel depended upon the trial judge for appointing him to cases, so appellate counsel was reluctant to raise any errors by the trial judge.[8] First, Harper may not raise this new claim for the first time in response to the Magistrate Judge's Report and Recommendation. Moreover, as

---

[8] Harper notes that, "Attorney Parson's office is in the courthouse complex and he depends on Judge Hicks for work." (Obj. 4.)

explained below, Harper fails to demonstrate that counsel had an actual conflict of interest that adversely affected counsel's performance.

The mere "*possibility* of [a] conflict [of interest] is insufficient to impugn a criminal conviction." *Cannady v. Everett*, No. 3:09CV241, 2010 WL 1169965, at *8 n.15 (E.D. Va. Mar. 24, 2010) (alterations in original) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980)). To demonstrate an actual conflict of interest exists, Harper "must show that [his] interests diverge[d] [from his attorney's] with respect to a material factual or legal issue or to a course of action." *Stephens v. Branker*, 570 F.3d 198, 209 (4th Cir. 2009) (alterations in original) (quoting *Gilbert v. Moore*, 134 F.3d 642, 652 (4th Cir. 1998)) (some internal quotations marks omitted)). Additionally, Harper must establish "that the actual conflict of interest compromised his attorney's representation." *Id.* The United States Court of Appeals for the Fourth Circuit identified a three-part inquiry for analyzing this second element:

> First, the petitioner must identify a plausible alternative defense strategy or tactic that his defense counsel might have pursued. Second, the petitioner must show that the alternative strategy or tactic was objectively reasonable under the facts of the case known to the attorney at the time of the attorney's tactical decision. [To demonstrate objective reasonableness,] the petitioner must show that the alternative strategy or tactic was "clearly suggested by the circumstances." Finally, the petitioner must establish that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict.

*Id.* (alteration in original) (quoting *Mickens v. Taylor*, 240 F.3d 348, 361 (4th Cir. 2001)).

The record on appeal reflects that appellate counsel was not reluctant to raise what he perceived to be errors by the trial judge and that counsel pursued the issues he thought would most likely to prevail on appeal. Harper fails to demonstrate that counsel labored under an actual conflict of interest or that counsel failed to pursue any claim on appeal because of any loyalty to the trial judge. Accordingly, Harper's second objection will be OVERRULED.

In his third and fourth objection, Harper criticizes the recommended dismissal of Claims 3 and 4. These claim lack merit for the reasons set forth by the Magistrate Judge. Accordingly, Harper's third and fourth objections will be OVERRULED.

## IV. CONCLUSION

Harper's objections will be OVERRULED. The Report and Recommendation will be ACCEPTED and ADOPTED. The Motions to Dismiss (ECF Nos. 15, 20) will be GRANTED. Harper's claims and the action will be DISMISSED. A certificate of appealability will be DENIED.

An appropriate Final Order will accompany this Memorandum Opinion.

Date: 3/10/16
Richmond, Virginia

/s/
John A. Gibney, Jr.
United States District Judge

13